IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  07-mj-01179-MJW

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALAN MICHAEL FROULA,

Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

**Entered by Magistrate Judge Michael J. Watanabe**

      This matter came on for trial to the court on November 8, 2007.  The Government was represented by Assistant United States Attorney Robert Brown.  The Defendant, Alan Michael Froula, was present on bond represented by Attorney Gregory Daniels.  The court has considered the testimony and credibility of all of the witnesses, the exhibits received into evidence, the factual and exhibit stipulations of the parties, the legal briefs, and the closing arguments presented by the parties.  The court now being fully informed makes the following findings of fact, conclusions of law, and order.

## FINDINGS OF FACT

      The court finds beyond a reasonable doubt:

        1.      That it has jurisdiction over the subject matter and over the parties

in this matter;

2.    That each party has been given a fair and adequate opportunity to be heard;

3.    That venue is proper in the State and District of Colorado. <u>See</u> written Stipulation (paragraph 5 below) that was approved and made an Order of Court at the beginning of this trial to court;

4.    That at the beginning of this trial, the parties stipulated into evidence Government's exhibits 1 through 11, inclusive, and Defendant's exhibits A-1 through A-5, inclusive;

5.    That at the beginning of this trial, the parties entered into the following written factual stipulation:

> The United States of America and the defendant, Alan Michael Froula, stipulate that events occurred aboard Frontier Airlines Flight 4961, an aircraft operated by Republic Airlines, on September 1, 2007, between Louisville, Kentucky and Denver, Colorado, occurred within the "special aircraft jurisdiction of the United States," as that term is defined in Title 49, United States Code, Section 46501(2). The parties further stipulate that Mr. Froula can submit substantive evidence regarding Ambien and Viagra and Paxil as well as his prescriptions for same.

6.    That Christopher Barrett testified that he was aboard Flight 4961 on September 1, 2007, working as a flight attendant. As of that time, Mr. Barrett had over 20 years of experience as a flight attendant. Just before the start of the final descent into Denver International Airport ("DIA"), Ms. Etters was conducting the safety

compliance checks, and Mr. Barrett walked behind her through the cabin of the airplane, and he was picking up trash. When Mr. Barrett passed by the male passenger in seat 14A, he saw the male passenger's penis sticking out of the bottom of his shorts around one to two inches. The male passenger then covered his penis with his hand when Ms. Etters tapped his seat. Mr. Barrett at first thought that the male passenger was sleeping and woke up with an erection. When Mr. Barrett returned to the galley in the back of the aircraft, the male passenger was no longer exposing himself. The plane touched down about five minutes after Mr. Barrett made the observation of the exposed penis. Mr. Barrett testified that the seat next to this male passenger was empty and that during the majority of the flight, the male passenger appeared to be sleeping; the passenger wore sunglasses and had an ipod strapped to his left arm. Also, during the flight Mr. Barrett never saw this male passenger get up or ask for anything to drink from him. Mr. Barrett never had any conversations with this male passenger during the flight. Mr. Barrett further testified that this male passenger was wearing khaki shorts, a polo shirt, dark aviator glasses, and a Guinness hat, and had an ipod strapped to his arm. Mr. Barrett later identified the male passenger seated in seat 14A as the defendant, Alan Michael Froula. After the airplane landed at

DIA, Mr. Barrett along with Ms. Etters, the Captain, and the First Officer, went to gate A-34 at DIA where defendant was transferring planes.

7.   That Julia Etters testified that she was aboard Flight 4961 on September 1, 2007, working as a flight attendant.  Ms. Etters had two years of experience as a flight attendant as of September 1, 2007.  The flight was routine until just before the start of the final descent into DIA.  Ms. Etters and Mr. Barrett walked through the cabin of the airplane.  She was conducting safety compliance checks, and Mr. Barrett was behind her during the walk through collecting trash.  At that time, passenger Michelle Brewer, who was seated in seat 15F, got her attention.  Ms. Brewer informed Ms. Etters about a male passenger seated in seat 14A who had his penis sticking out the left side of his shorts.  Ms. Etters saw his penis exposed, but she kept walking through the cabin toward the front of the airplane.  Ms. Etters was shocked as to what she saw, but she did not immediately contact the cockpit to notify the Captain since it was against policy to do so during final descent unless it was an "emergency."  Ms. Etters further testified that this male passenger was wearing khaki shorts, a polo shirt, a Guinness hat, and sunglasses and had an ipod strapped to his arm.  She does not remember him having a neck pillow.  Ms. Etters also

testified that the male passenger appeared to be sleeping during the majority of the flight because he had his seat reclined and an ipod, and she assumes passengers in that position are sleeping. She served him only water during the flight. Ms. Etters later identified the male passenger seated in seat 14A as the defendant, Alan Michael Froula. After the airplane landed at DIA, Ms. Etters notified the Captain and the gate agent as to what had happened. Ms. Etters, along with the Captain, First Officer, and Mr. Barrett, later went to gate A-34 at DIA where defendant was transferring planes.

8.  That Michelle Brewer testified that she was aboard Flight 4961 in row 15 on September 1, 2007, as a passenger along with her husband and two minor children. That approximately one hour after take-off, Mrs. Brewer looked to her left and saw a male passenger in the row in front of her husband wearing khaki shorts, sunglasses, and a polo shirt. Thereafter, she saw this male passenger use his left hand to pull up his shorts and then saw this same male passenger reach up his shorts and pull out his penis, adjust it, and look down. Mrs. Brewer testified that it was not accidental when the male passenger pulled out his penis. The male passenger looked down so he could see his penis, sat back, and left his penis like that. He was seated at a forty-five degree

angle to where Mrs. Brewer was seated, and the seat next to the him was unoccupied.  <u>See</u> exhibit 4.  The photograph in exhibit 4 is taken from Mrs. Brewer's seat facing toward the male passenger in seat 14A.  According to Mrs. Brewer, the male passenger "touched it and messed with it" for approximately 20 to 25 minutes.  The male passenger kept looking toward his right, and he was looking at Mrs. Brewer.  Mrs. Brewer testified that the male passenger did not appear to be sleeping since he was looking all around.  When asked how many times Mrs. Brewer saw the male passenger's penis out, she testified 8 or 9 times.  She wanted to make sure she was seeing accurately.  Mrs. Brewer was appalled and very uncomfortable.  The passenger eventually stopped messing with himself.  Later, during the final descent into DIA, as the female flight attendant was walking through the cabin, Mrs. Brewer contacted her and explained to her what she had seen.  The female flight attendant said, "I'm not telling him it's out."  The male passenger's penis remained out after Mrs. Brewer spoke with the flight attendant.  The male passenger put it back in during descent. After the plane landed, Mrs. Brewer went to Frontier Security by baggage claim.

9.     That Cassandra Hook testified that she was aboard Flight 4961 on September 1, 2007, as a passenger along her friend Natalie Libs.

Ms. Hook was seated in row 14 in the window seat directly across the aisle from the male passenger.  <u>See</u> Government's exhibit 6 which shows the view from Ms. Hook's window seat to where the male passenger was seated.  The male passenger was turned facing toward her.  He was looking at her, and she felt uncomfortable.  During the beginning portion of the flight, the male passenger starting rubbing himself on top of his shorts, and he was masturbating according to Ms. Hook.  Ms. Hook could see the outline of his penis.  The male passenger continued to masturbate for approximately five (5) minutes outside of his shorts.  The male passenger then unzipped his shorts with his right hand and continued to masturbate.  Ms. Hook could see his aqua underwear.  The male passenger finally zipped up his shorts, and he fell asleep.  After the male passenger fell asleep, Ms. Hook went to the restroom (i.e., lavatory), and she switched seats with her friend Natalie Libs.  During the descent into DIA, Ms. Hook saw the male passenger rise up from his seat and pull his penis out again from under his shorts and continued to touch his penis.  Shortly thereafter, the lady who was sitting behind them stopped the flight attendant and told the flight attendant what she had witnessed.  The male passenger then raised himself up and adjusted himself, and his penis was no longer visible.  When the flight landed at DIA,

the male passenger made a call on his cell phone, talking about gambling and Tennessee, and he exited the airplane. Ms. Hook and her friend Natalie Libs then exited the airplane, proceeded to the baggage claim area, and filed a report with the authorities.

10. That Natalie Libs testified that she was aboard Flight 4961 on September 1, 2007, as a passenger along her friend Cassandra Hook. Ms. Libs was initially seated in row 14 in the aisle seat directly across the aisle from the male passenger, and Ms. Hook was initially seated in the window seat next to her. Ms. Libs testified that Flight 4961 sat at the gate in Louisville for about twenty minutes because it was low on supplies. She further testified that the male passenger across the aisle from her was staring at her, and he made her feel "uncomfortable." This male passenger had a "creepy grin and/or smile" on his face according to Ms. Libs. The male passenger was angled at forty-five degrees towards Ms. Libs and Ms. Hook, and his legs were in front of the aisle seat next to him which was unoccupied. The male passenger was wearing shorts, sunglasses, and headphones. Ms. Libs' friend, Ms. Hook, told her that he (meaning the male passenger) was rubbing himself on his crotch. Ms. Libs further testified that during take off she could see the male passenger rubbing his penis and masturbating outside of his shorts. Ms. Libs never saw the

male passenger's shorts unzipped at that time. The male

passenger finally stopped rubbing himself, and he got up and got

something, which looked like medicine, from the overhead

compartment, sat back down in the same position, and appeared to

fall asleep with his head back and mouth open.  Once he fell

asleep, Ms. Libs then went to the restroom (i.e., lavatory), and

when she returned from the restroom, she and Ms. Hook switched

seats since Ms. Libs was "uncomfortable" sitting on the aisle seat

across from the male passenger.  Ms. Libs further testified that she

witnessed the male passenger asleep only during a small portion

of the middle of the flight.  During the last half hour of the flight, Ms.

Libs saw the male passenger's penis sticking out from below his

shorts, and the male passenger was again masturbating with his

left hand.  Just prior to landing at DIA, the male passenger

adjusted himself, and she could no longer see his penis.  Once the

airplane landed at DIA, the male passenger made a call on his cell

phone and was talking to Cheryl about gambling when he exited

the airplane.  Ms. Libs and Ms. Hook then exited the airplane.

They contacted the authorities and later spoke to and gave written

statements to the Denver Police Department.

11.    That Officer David Mastroianna testified that he is a police officer

for the Denver Police Department.  That on September 1, 2007, he

was on duty as a patrol officer for the Denver Police Department assigned to DIA. That on September 1, 2007, Officer Mastroianna received a call concerning a potential incident. Officer Mastroianna contacted the flight crew of Flight 4961 and did some interviews and some investigation and thereafter contacted the FBI. Officer Mastroianna later arrested the defendant, Alan Michael Froula, at gate A-34 at DIA.

12.    That Special FBI Agent Joel Nishida ("Agent Nishida") testified that he was on duty on September 1, 2007, assigned to DIA. On September 1, 2007, Agent Nishida was contacted by the Denver Police Department and was asked to go to gate A-48 at DIA. Agent Nishida then proceeded to gate A-48 and was informed of the events that took place on Frontier Airlines Flight 4961 concerning the male passenger. Agent Nishida then proceeded to process the potential crime scene in the area around seat 14A aboard Flight 4961. Agent Nishida did not find any physical evidence or bodily fluids on or about seat 14A. During his investigation, Agent Nishida determined that seat 14A on Flight 4961 was occupied by the defendant, Alan Michael Froula. See exhibit 11. Thereafter, Agent Nishida interviewed the flight crew and determined that defendant Alan Michael Froula should be arrested for unlawfully and knowingly making an obscene and

indecent exposure of his person, namely, the exposure of his penis, while on board an aircraft within the special aircraft jurisdiction of the United States, Frontier Airlines flight number 4961, which was en route from Louisville, Kentucky, to Denver, Colorado, in violation of Title 49, United States Code, Section 46506(2) incorporating District of Columbia Code, Section 22-112 (Class C Misdemeanor). Following the arrest of defendant Froula, Agent Nishida took photographs of defendant Froula and photographs of articles that Froula had in his possession. See Government's exhibits 8, 9, and 10. Agent Nishida further testified that he later took additional photographs of the airplane as depicted in Government's exhibits 1 and 3 through 7, inclusive. Lastly, Agent Nishida obtained a diagram of the interior of the airplane for Flight 4961 that shows the seating configuration. See Government's exhibit 2.

13. That flight attendant Christopher Barrett, flight attendant Julia Etters, passenger Michelle Brewer, passenger Cassandra Hook, passenger Natalie Libs, Denver Police Officer David Mastroianna, and Special FBI Agent Joel Nishida all identified the defendant, Alan Michael Froula, in open court during this trial to the court.

14. That defendant's father, James Froula, and defendant's older sister, Barbara Froula, both testified, in essence, that defendant is

a very honest, family man and is a good son and brother, respectfully. That neither James Froula or Barbara Froula had any personal knowledge of the events that place aboard Frontier Airlines Flight 4961 on September 1, 2007.

15.     That defendant, Alan Michael Froula, testified on his own behalf. Defendant testified that on Friday evening, August 31, 2007, he took a bike ride and mowed the lawn since he was scheduled to leave on a two-week business trip on Saturday, September 1, 2007.  He then took his family out to dinner, went home, finished packing, synced up his new ipod for his trip, and he and his wife shared some wine.  Defendant further testified that he took Paxil and Viagra since he was hoping to get "intimate" with his wife because he would be away from home for two weeks traveling on business.  See Defendant's exhibits A-1 and A-3.  However, defendant did not get "intimate" with his wife since one of their children was longing for his mother, and defendant's wife went upstairs and fell asleep with such child.  She then came out of the child's room at 11:00 p.m. and went to bed.  Defendant stayed up, still loading his new ipod with music to take with him on his two-week business trip, packed, brushed his teeth, and finally went to bed around midnight.  Before doing so, he took Ambien, which is dispensed by GE (General Electric, where Defendant is employed)

when they go on international trips.  <u>See</u> Defendant's exhibit A-2.
He was worried about falling asleep quickly, but he fell asleep
around 12:20 to 12:30 a.m. on September 1, 2007.  Defendant
woke up around 4:30 a.m. on September 1, 2007.  He got himself
ready to go to the airport.  Defendant testified that he normally
drinks strong coffee in the morning (about four cups between 7 and
10:30 a.m.), but he did not drink coffee or have breakfast when he
woke up that day.  He woke up his wife, and she drove him to the
airport where she dropped him off.  Defendant recalls checking his
luggage, going through security, and boarding Frontier Airlines
Flight 4961.  He put his things in the overhead bin and prepared to
sleep on the plane by placing his earplugs in his ears, placing his
neck pillow around his neck, placing his headphones over his ears,
and being seated.  Defendant further testified that his headphones
were connected to his new ipod, and he was listening to Brian L.
Weiss, M.D.'s Meditation to Inner Peace, Love and Joy since he
was trying to relax and chill to sleep.  Defendant recalls that he
was also wearing shorts due to the record heat in Louisville and
the temperature in Oakland where he was headed and was going
to attend a football game (although he normally wears sweat pants
when he flies), a polo shirt, sunglasses, and a cap when he was
seated in the airplane.  <u>See</u> Defendant's exhibit A-4 and

Government's exhibits 8, 9, and 10.  Defendant further testified that he remembers boarding, which was fairly uneventful.  Once he was seated on the airplane, he immediately tried to go to sleep, and he does not recall and does not have any knowledge of any part of the early portion of the flight other than trying to sleep.  Defendant next remembers being woken up by flight attendants bringing drinks. He noticed he had a little bit of a sinus headache which reminded him that he did not take his allergy medicine (Allegra), which he then retrieved from the overhead compartment and took with some bottled water that the flight attendant had given to him.  He testified that he then immediately tried to go back to sleep.  The next thing that Defendant claims to remember is about five to seven minutes before touchdown having the back of his seat tapped by the flight attendant and being told to put his seat up.  When he put his seat back up, he started to look out the window to see the mountains and looked toward the back of the plane because he thought he recognized a family that was seated there.  Defendant further denied intentionally doing any of the things described by some of the government's witnesses, i.e., that he never intentionally unzipped his shorts on the flight, never let his penis fall out of his shorts with an erection, and never did masturbate with his penis. Defendant does recall landing in Denver at DIA, then making a call

to his wife at home on his cell phone, and talking to her about the Tennessee football game against California Berkeley while the airplane was taxiing to its gate at DIA, while he departed the plane, and while he stood in the gate area at DIA. Defendant also recalls then going to the restroom, locating his next gate, looking for food, and eating at Quizno's Restaurant at DIA. Furthermore, he recalls then going back to his next gate at DIA since he was changing airplanes to travel to San Francisco, California. Defendant recalls being approached by a Denver Police Officer at the gate where his flight to San Francisco was to depart, and he recalls being arrested and photographed. Finally, Defendant testified that he was wearing white boxers underwear on September 1, 2007.

16. That the testimony of passengers Michelle Brewer, Cassandra Hook, and Natalie Libs as well as the testimony of flight attendants Christopher Barrett and Julia Etters is credible.

17. That the testimony of Defendant, Alan Michael Froula, is not credible. Defendant's recollection is extremely and conveniently selective. While he claims to have taken the Ambien before he went to sleep (from his testimony it appears it was taken between midnight and 12:20 or 12:30 a.m.), he recalls all of his activities from the time he woke up at around 4:30 a.m. (including getting ready at home, being driven to the airport, checking baggage,

going through security, and boarding the plane) until allegedly

falling asleep on the airplane, which based upon the testimony was

around 7 a.m., or around seven or more hours after he allegedly

took the Ambien.  He then incredibly claims to have no recollection

from the time he claims he fell asleep (at which point he

masturbated on top of and inside his shorts) until waking up when

beverages were being brought through the cabin, at which point he

amazingly once again recalls his activities (i.e., recalling that he

did not take his Allegra, had a slight sinus headache, retrieved the

Allegra from the overhead bin, and took the Allegra with bottled

water obtained from the flight attendant).  Then, the alleged

amnesia begins again when he purportedly fell asleep again and

(more than eight or nine hours after he allegedly took the Ambien)

exposed himself to the three passengers and two crew members.

Significantly, flight attendant Barrett testified that after his fellow

flight attendant spoke to Defendant, Defendant immediately

covered his penis with his hand.  Nevertheless, despite having

specific recollection of being woken up by the female flight

attendant, as well as specific recollection of all of his actions after

being woken up, i.e., looking out the window at the mountains,

looking toward the back of the plane at a family he thought he

recognized, calling his wife on his cell phone (and the details of

that conversation), Defendant incredibly has no recollection of seeing his penis exposed.

18. That the Defendant, Alan Michael Froula, intentionally exposed his penis to others.

## CONCLUSIONS OF LAW

Count One in the Information, as amended, charges the Defendant Alan Michael Froula with the offense of Indecent Exposure Aboard Aircraft within the Special Aircraft Jurisdiction of the United States, in violation of 49 U.S.C. § 46506 (2) incorporating District of Columbia Code, Section 22-1112 (Class C Misdemeanor). See Order granting the Government Motion to Amend Information to Reflect Subsection (2) of the Statute Alleged, 49 U.S.C. § 46506 (docket no. 21) dated November 8, 2007.

An exposure becomes indecent when the defendant exposes himself at such a time and place, where as a reasonable man he knows or should know his act will be open to the observation of others. Peyton v. District of Columbia, 100 A.2d 36, 37 (D.C. 1953); Hearn v. District of Columbia, 178 A.2d 434, 437 (D.C. 1962). Before a defendant can be found guilty of indecent exposure, a defendant must have intended to do this prohibited act, though "the intent required is only a general one, and need not be directed toward any specific person or persons." Peyton, 100 A.2d at 37. "Ordinary acts involving exposure as a result of carelessness or thoughtlessness, particularly when such acts take place within the privacy of one's home, do not in themselves establish the offense of indecent exposure." See Selph v. District of Columbia, 188 A.2d 344, 345 (D.C. 1963). "Nudity is not per se 'obscene.' It is not illegal for a man to

be completely unclothed in his room. It becomes so only if he intentionally exposes himself to other persons." Id.

The word "knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident or other innocent reason. See Tenth Circuit Pattern Jury Instruction 1:37 revised August 9, 2004.

## FINDING OF GUILT

Based upon these findings of fact and conclusions of law, the court finds, beyond a reasonable doubt, that Defendant Alan Michael Froula, on September 1, 2007, in the State and District of Colorado, did knowingly make an obscene and indecent exposure of his person, namely, he exposed his penis, to passengers Michelle Brewer, Cassandra Hook, and Natalie Libs and to flight attendants Christopher Barrett and Julia Etters, while on board an aircraft within the special aircraft jurisdiction of the United States, on Frontier Airlines Flight Number 4961, which was en route from Louisville, Kentucky, to Denver, Colorado, in violation of Tile 49 U.S.C. Section 46506(2) incorporating District of Columbia Code, Section 22-112 (Class C Misdemeanor).

Accordingly, the court finds the Defendant Alan Michael Froula **GUILTY**, beyond a reasonable doubt, of Count One Indecent Exposure Aboard Aircraft within the Special Aircraft Jurisdiction of the United States in violation of Title 49 U.S.C. Section 46506(2) incorporating District of Columbia Code, Section 22-112 (Class C Misdemeanor).

## ORDER

**WHEREFORE**, based upon these findings of fact and conclusions of law, the

court **ORDERS**:

1.   That a presentence investigation shall be conducted by the
Federal Probation Department for the District of Colorado and that
a presentence investigation report shall be prepared by the
Federal Probation Department.  That Defendant Alan Michael
Froula shall contact the Federal Probation Department for the
District of Colorado within five (5) days from the date of this Order
so that the presentence investigation report can be completed
timely.

2.   That a sentencing hearing is set on February 29, 2008, at 10:00
a.m. in Courtroom A502, Alfred A. Arraj United States Courthouse,
901 19th Street, Denver, Colorado 80294 before Magistrate Judge
Michael J. Watanabe.

3.   That Defendant Alan Michael Froula shall appear in person at his
sentencing hearing on February 29, 2008, at 10:00 a.m. in
Courtroom A502.

4.   That the Defendant's bond shall continue until his sentencing
hearing.

Done this 28th day of November 2007.

BY THE COURT

s/ Michael J. Watanabe
MICHAEL J. WATANABE
U.S. MAGISTRATE JUDGE